UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS E. PEREZ, Secretary of
Labor, United States Department
of Labor,

      Plaintiff,

v.                              Case No. 8:14-cv-2487-T-33TGW

LA BELLA VIDA ALF, INC., and
MAVEL INFANTE,

      Defendants.

_____/

**ORDER**

This cause is before the Court on Defendants La Bella Vida ALF, Inc. and Mavel Infante's Motion for Summary Judgment filed on August 3, 2015. (Doc. # 46). Also before the Court is Plaintiff Thomas E. Perez's, Secretary of Labor, United States Department of Labor, (the Secretary) Motion for Partial Summary Judgment filed on August 3, 2015. (Doc. # 47). On September 2, 2015, the parties filed their respective responses in opposition. (Doc. ## 52, 53). La Bella Vida and Infante filed a reply on September 16, 2015. (Doc. # 56). The Secretary filed a reply on September 18, 2015. (Doc. # 58). Both motions are now ripe for this Court's review.

**I.**    **Background**

1

In December 2009, Infante, along with her husband, opened La Bella Vida. (Doc. # 48-1 at 9). La Bella Vida operated three residential living facilities: La Bella Vida I, located at 8716 Fountain Avenue, Tampa, FL; La Bella Vida II, located at 5816 North Grady Avenue, Tampa, FL; and La Bella Vida III, located at 14053 Briardale Lane, Tampa, FL. (Doc. # 5 at 2). At each of these three facilities La Bella Vida provided assistance with daily living and live-in services for the elderly. (Doc. # 48-1 at 14:15-15:9). Employees of La Bella Vida worked in various positions, such as housekeeper, Certified Nursing Assistant, or secretary. (Doc. # 47-1 at 27). Employees were paid on the 15th and the 30th of every month. (Id. at 36:19-37:6).

Employees at these facilities worked several different shifts. On Monday through Friday of each week, there was a shift from 7 a.m. to 2 p.m. (the Morning Shift); 2 p.m. to 7 p.m. (the Afternoon Shift); and 7 p.m. to 7 a.m. (the Night Shift). (Id. at 27-28, 31). The Weekend shift ran from 7 a.m. on Saturday to 7 a.m. Monday. (Id.). During the overnight shifts, only one employee was on duty. (Id. at 28).

For the employees who worked the Night and Weekend Shifts, duties included taking care of the residents if there was an emergency, taking the residents to the bathroom if

needed, and changing the residents' diapers if needed. (Id. at 52:20-54:7; 57:16-58:18; 95-96). Employees working overnight were instructed to do a round at midnight to make sure no residents were sleeping in wet clothes. (Id. at 57, 95-96). According to the Secretary, employees working the overnight shifts were often called to duty in the night and slept fewer than 5 hours. (Doc. ## 47-4 at 3, ¶ 4; 47-4 at 9, ¶ 4; 47-4 at 18, ¶ 4; 47-4 at 23, ¶ 4; 47-4 at 28, ¶ 4; 47-4 at 33, ¶ 4; 47-4 at 39, ¶ 4; 47-4 at 44, ¶ 4; 50-1 at ¶ 4; 50-2 at ¶ 3; 50-3 at ¶ 4; 50-4 at ¶ 4). But, according to Infante, she observed the employees via security cameras and verified each day that the employees were able to sleep more than 5 hours per night. (Doc. ## 47-1 at 20:18-25, 51:11-19, 97:20-98:1). These video recordings were automatically overwritten, and thereby deleted, every 30 days. (Doc. ## 47-1 at 20:18-25; 53-2 at ¶¶ 7-8).

Furthermore, employees working overnight were provided some form of sleeping accommodations. In particular, employees were provided with a bedroom at La Bella Vida I and III. (Doc. ## 53-1 at 57:7-15; 53-2 at ¶ 9). According to Infante, these bedrooms were fully furnished (Doc. # 53-2 at ¶ 9); however, a former employee submitted an affidavit stating that the room only contained a mattress on the floor

(Doc. # 47-4 at 44, ¶ 4). At La Bella Vida II, Infante claims the employees were free to choose between a bedroom and a sofa, which turned into a sofa-bed, in the family room. (Doc. # 53-2 at ¶ 9). However, several employees have submitted affidavits stating that no such bedrooms were made available and that the sofa-bed was actually just a sofa. (Doc. ## 47-4 at 3, ¶ 4; 47-4 at 9, ¶ 4; 47-4 at 18, ¶ 4; 47-4 at 28, ¶ 4; 47-4 at 33, ¶ 4). La Bella Vida and Infante deducted 5 hours per night from each employee who worked an overnight shift. (Doc. # 47-1 at 34-35).

Infante claims that the employees consented to this deduction (Doc. ## 53-1 at 95:12-25; 53-2 at ¶ 5; 53-3 at ¶ 3); however, several employees state that there was no agreement concerning sleep-time deductions (Doc. ## 47-4 at 18, ¶ 4; 47-4 at 23, ¶ 4; 47-4 at 28, ¶ 4; 47-4 at 33, ¶ 4; 47-4 at 39, ¶ 4; 47-4 at 44, ¶ 4; 50-1 at ¶ 4; 50-2 at ¶ 3; 50-3 at ¶ 4; 50-4 at ¶ 4). In addition, La Bella Vida and Infante deducted an hour per day for meal breaks from the hours worked by Weekend-Shift employees. (Doc. # 47-1 at 75:10-76:18). The employees were not free to leave the facility during their breaks and were required to attend to the residents if needed. (Doc. # 47-1 at 56:7-12).

In May of 2014, an investigator for the Department of Labor, Wage and Hour Division, Carola Diaz, opened an investigation into whether La Bella Vida was violating the Fair Labor Standards Act of 1938 (FLSA) and visited La Bella Vida on May 27, 2014. (Doc. ## 47-3 at ¶¶ 4, 6; 48-2 at ¶ 6). Diaz returned for a second visit on May 28, 2014. (Doc. ## 47-3 at ¶ 8; 48-2 at ¶ 7). Diaz again returned on June 28, 2014, to La Bella Vida to collect additional copies of time records for the employees. (Doc. # 48-2 at ¶ 8). Subsequent thereto, the Secretary filed suit against La Bella Vida and Infante on October 2, 2014. (Doc. # 1). In this action, the Secretary seeks to recover back wages, and an equal amount in liquidated damages, for 20 employees. In particular, those 20 employees are listed below.

1. Rosa M. Artaza;
2. Yanara Barrios;
3. Ariannys Blanco;
4. Olga Cabezas;
5. Jehysel Carballo;
6. Barbara Cardenas;
7. Juan Castellano;
8. Yatnira Chang;
9. Ines Febles;
10. Mayda Hernandez;
11. Mabel Izquierdo;
12. Mayra Ledesma;
13. Mairelis Matos-Gonzalez;
14. Ibia Mestre;
15. Yoleidy Ramos;
16. Reina Rivas;
17. Damaris Rubalcaba;

        18. Marta Sanchez;
        19. Oralvi Santiesteban; and
        20. Vilma Villamar.

(Id.; Doc. # 52-1 at 4-7).

     In May of 2015, La Bella Vida ceased operations and no longer employs any employees. (Doc. ## 48-2 at ¶ 11; 53-2 at ¶ 11); cf. (Doc. # 47-3 at ¶ 20). However, it is unclear whether La Bella Vida is still an active corporate entity with the State of Florida and, if so, to what extent. (Doc. ## 47-3 at ¶ 20; 53-2 at ¶ 11). There is also conflicting evidence as to whether Infante is the administrator for the facility now operating at the former La Bella Vida III location. (Doc. ## 47-3 at ¶ 22; 53-4). Furthermore, Infante and her husband, or her husband's company, still own the properties at which the La Bella Vida facilities were located. (Doc. # 47-3 at ¶ 23).

     Both parties have now filed motions for summary judgment, as well as their respective responses and replies. Being otherwise fully briefed, the Court grants in part and denies in part both pending motions for summary judgment.

## II.  **Legal Standard**

     Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590,

593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. <u>Analysis</u>

The FLSA provides that covered employers must pay employees a minimum wage for all hours worked. 29 U.S.C. § 206(a). Except as otherwise provided, no employer shall employ any employee for a workweek longer than 40 hours unless such employee receives compensation for her or his employment

8

in excess of 40 hours at a rate not less than one and one-half times the regular pay rate. Id. at § 207(a)(1). A covered employer must "make, keep, and preserve" records for each respective employee's wages, hours, and other conditions and practices of employment. Id. at § 211(c). It is unlawful for any person to violate the provisions of Sections 206, 207, and 211(c). Id. at § 215(a)(2), (5).

Any person who willfully violates the provisions of Section 215 is subject to a fine not more than $10,000, six months' imprisonment, or both. Id. at § 216(a). Further, an employer who violates the provisions of Section 206 or Section 207 is liable to the affected employee or employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Id. at § 216(b). Either an employee or the Secretary may bring an action to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages. Id. at §§ 216(b)-(c). In actions maintained by the Secretary, any sums thus recovered on behalf of the employee or employees, "shall be paid . . . directly to the employee or employees affected." Id. at § 216(c).

A.   **Employees Paid**

9

A case is moot when the parties lack a legally cognizable interest in the outcome or when there is no longer a live controversy with respect to which the court can give meaningful relief. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). The mootness doctrine applies to FLSA cases. Dean v. Cmty. Dental Servs., Inc., No. 8:12-cv—1507-T-33AEP, 2012 WL 4208114, at *2 (M.D. Fla. Sept. 19, 2012). Thus, a FLSA claim is mooted when the employer-defendant tenders full payment. Evans v. Gen. Mech. Corp., 6:12-cv-229, 2012 WL 1450107, at *1 (M.D. Fla. Apr. 25, 2012).

In this case, the Secretary calculated the back wages, plus an equal amount in liquidated damages, owed to Blanco, Carbollo, and Febles as $3,711.80, $24,293.80, and $6,482.00, respectively. (Doc. # 52-1 at 4-5). La Bella Vida tendered the full amount due as calculated by the Secretary to Blanco, Carbollo, and Febles. (Doc. ## 48-2 at ¶ 10; 48-6 at ¶ 2; 48-8 at ¶ 4; 48-23 at 3, 5, 9). Therefore, to the extent that the Secretary's claims are premised on the failure to pay Blanco, Carbollo, and Febles in accordance with the FLSA, those claims are dismissed.

**B.   Undisputed Issues**

The Secretary moves for summary judgment as to whether (1) La Bella Vida and Infante are subject to enterprise

coverage as defined by Section 203(s)(1)(B); (2) Infante is an employer as defined by Section 203(d); and (3) La Bella Vida and Infante violated Sections 211(c) and 215(a)(5) by failing to keep adequate and accurate records of the hours worked by their employees. (Doc. # 47 at 2). The Secretary does not move for summary judgment as to whether La Bella Vida and Infante willfully violated the FLSA. (Id. at 3).

La Bella Vida and Infante "do not dispute (1) that [La Bella Vida] is subject to coverage under 29 U.S.C. § 203(s)(1)(B)[;] (2) that [Infante] was an employer as defined by Section 203(d)[;] and (3) that [La Bella Vida] mistakenly, not willfully, failed to maintain complete records in the manner required by Section 211(c) . . . ." (Doc. # 53 at 2 n.1). Therefore, the Court grants summary judgment in the Secretary's favor as to those undisputed issues.

## C.   Deductions for Sleep and Meal Breaks

The Secretary also seeks summary judgment as to whether La Bella Vida and Infante were entitled to deduct (1) sleep time from the hours worked by Night-Shift employees; (2) sleep time from the hours worked by Weekend-Shift employees; and (3) break time from the hours worked by Weekend-Shift employees. (Doc. # 47 at 2). The Court addresses the issues

by shift. But, a preliminary discussion of the regulations promulgated in furtherance of the FLSA is required.

### 1.    The FLSA and Accompanying Regulations

The FLSA is silent as to whether sleep time is compensable time. However, the Wage and Hour Division[1] has promulgated interpretive rules[2] addressing that exact issue. Maldonado v. Alta Healthcare Grp., Inc., 17 F. Supp. 3d 1181, 1190 (M.D. Fla. 2014) (recognizing Sections 785.21 and 785.22 as interpretive rules); see also (Doc. # 58 at 1 n.1) (stating "Defendants are correct that Section 785.21 [and] 785.22 . . . are 'interpretative rules' . . . . Nevertheless, the interpretative rules are entitled to some level of deference . . ."). In particular, Sections 785.21 and 785.22, 29 C.F.R. §§ 785.21-785.22, address whether sleep time is compensable; that is, whether sleep time is included when calculating hours worked under the FLSA.

---

[1] "Congress tasked the DOL with interpreting the terms of the FLSA and issuing regulations thereunder. See generally 29 U.S.C. § 204 (creating the DOL's Wage and Hour Division to administer the substantive provisions of the FLSA)." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1299 n.8 (11th Cir. 2011).

[2] An interpretative rule is exempted from the notice-and-comment procedures. 5 U.S.C. § 553(b)(A).

Section 785.21 provides, "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21. In contrast, Section 785.22 provides,

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited.
> . . . .
> If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time.

29 C.F.R. § 785.22. The parties disagree about what, if any, level of deference this Court affords Sections 785.21 and 785.22. (Doc. ## 56 at 4-9; 58 at 1-2).

The Supreme Court has noted that "the power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Long Island Care at Home, Ltd. v.

Coke, 551 U.S. 158, 165 (2007) (quoting Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)) (internal quotation marks and omissions omitted). "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." Id. The "ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of 'gap-filling' authority." Id. at 173 (emphasis original).

Although notice-and-comment rulemaking is highly indicative of a congressional intent for courts to defer, the lack of that procedure is not dispositive. Barnhart v. Walton, 535 U.S. 212, 221-22 (2002); see also United States v. Mead Corp., 533 U.S. 218, 230-31 (2001) (stating "as significant as notice-and-comment is in pointing to Chevron authority, the want of the procedure here does not decide the case . . ."). The Court has also looked to factors such as "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has

14

given the question over a long period of time" in determining whether a particular agency interpretation is entitled to Chevron deference. Barnhart, 535 U.S. at 222. A court defers to the interpretive regulations promulgated by the Department of Labor "when the statutory language is ambiguous or the statutory terms are undefined." Josendis, 662 F.3d at 1299 (citing Chevron, 467 U.S. at 843-45, as "requiring deference where the statutory language is ambiguous and the rule-making agency's regulation is a reasonable interpretation of Congress' intent").

Furthermore, even if a regulation or interpretation is not entitled to Chevron deference, it may still be entitled to deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944). See Christensen v. Harris Cty., 529 U.S. 576, 587 (2000). Thus, if the regulation is of "longstanding duration," it would still be entitled deference under Skidmore, and "particular deference" is normally accorded to an agency interpretation of longstanding duration. Ramos-Barrientos v. Bland, 661 F.3d 587, 598 (11th Cir. 2011) (finding regulations promulgated in 1967 entitled to Skidmore deference "in part because they were adopted in 1967"). With those principles in mind, the Court now addresses the issue of sleep and meal break deductions.

## 2. **Night-Shift Employees**

Whether an employer may deduct sleep time from employees working a shift of less than 24 hours when calculating hours worked for purposes of Section 206 and 207 is interstitial in nature. See generally 29 U.S.C. §§ 201-219. Congress tasked the Department of Labor with interpreting the terms of the FLSA and promulgating regulations thereunder. Josendis, 622 F.3d at 1299 n.8. And Sections 785.21 and 785.22 do just that by squarely focusing on this gap of whether sleep time is to be included when counting hours worked, which, in turn, impacts a determination of whether an employer violates Sections 206 and 207. In addition, Sections 785.21 and 785.22 are of longstanding duration. 26 Fed. Reg. 190, 192-93 (Jan. 11, 1961).

Of course, Section 785.21 and 785.22 are not entitled to deference if they are "arbitrary or capricious in substance, or manifestly contrary to the statute." Mead Corp., 553 U.S. at 227. In this vein, La Bella Vida and Infante argue Section 785.21 is arbitrary because another interpretative rule addressing meal breaks, Section 785.19, does not include a 24-hour distinction. (Doc. # 53 at 6-7). La Bella Vida and Infante further argue in rhetorical style that drawing the line at 24 hours, rather than at 23 or 25, is a "fiat." (Id.

16

at 7). In light of the qualitative difference between meal and sleep breaks, in addition to the fact that a day is composed of 24 hours, the Court finds these arguments unpersuasive. Thus, the Court defers to Sections 785.21 and 785.22.

Here, it is not disputed that the Night Shift was less than 24 hours in duration. (Doc. ## 47-1 at 27:21-28:14, 31:15-19; 47-2 at 6; 47-3 at 11; 53-2 at ¶ 4). Further, the Court defers to Section 785.21, which does not allow for the deduction of sleep time from hours worked by an employee working a shift less than 24 hours. Accordingly, the Court grants the Secretary's Motion to the extent it seeks an entry of judgment that La Bella Vida and Infante were not entitled to deduct sleep time from hours worked by Night Shift employees.

### 3.   **Weekend-Shift Employees**

Turning to the Weekend-Shift employees, the operative regulation is Section 785.22, which addresses situations where employees are on duty for 24 hours or more. When an employee is on duty for more than 24 hours, "the employer and employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours worked, provided adequate sleeping facilities

are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep." 29 C.F.R. 785.22(a). "For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time." Id. at § 785.22(b).

As to bona fide meal periods, the applicable regulation provides,

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19(a). However, "It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period." 29 C.F.R. § 785.19(b).

Kohlheim v. Glynn County, Ga., 915 F.2d 1473 (11th Cir. 1990), sets forth the standard for determining whether a meal period is a bona fide meal period. Avery v. City of Talladega, Ala., 24 F.3d 1337, 1344-46 (11th Cir. 1994) (stating that Section 785.19 and Kohlheim set the general standard

regarding meal breaks); see also Chao v. Tyson Foods, Inc., 568 F. Supp. 2d 1300, 1306-07 (N.D. Ala. 2008) (noting that Kohlheim's standard is applied when Section 785.19 is the applicable regulation). Under Kohlheim, an employer must establish that an employee is completely relieved from duty in order to deduct a meal break from the hours worked; the "essential consideration" is whether the employees "are in fact relieved from work for the purpose of eating a regularly scheduled meal." Kohlheim, 915 F.2d at 1477.

It is not disputed by the parties that the Weekend Shift consisted of more than 24 hours. (Doc. ## 47-1 at 27:17-23, 31:15-19; 47-3 at ¶ 11; 48-1 at 109:21-25; 53-2 at ¶ 5). However, there is a genuine issue of material fact regarding whether the employees were (a) able to sleep at least 5 hours a night and agreed to the sleep-time deductions; (b) provided with adequate sleeping facilities; and (c) completely relieved from duty during their meal breaks.

### a. Sleep-time deductions and agreements

With regards to whether the employees were able to sleep at least 5 hours a night, Infante submitted a declaration stating that "There was never a time when an employee working overnight did not get at least five hours of uninterrupted sleep, which was the same experience I had when I personally

19

worked the overnight shift and before I hired any employees."
(Doc. # 53-2 at 7). Furthermore, Infante testified at her
deposition that employees slept 5 hours a night. (Doc. # 47-1 at 51:11-19). In addition, in response to a question
concerning how she knew the employees slept during the night,
Infante stated:

> I have camera, and so I -- like I normally try to
> take a look like every half an hour, every hour
> during the nighttime. I'll wake up to look at the
> camera or the next day I'll take a look at my
> cellphone to make sure that they're not lying if
> they slept or they're awake.

(Id. at 97:20-98:1); see also (Doc. # 47-1 at 20:18-25); cf.
(Doc. # 53-2 at ¶¶ 7-8). A former employee also stated that
"There was never a time where an employee slept less than
five hours a night. In fact, the employees slept much more
than five hours the majority of nights." (Doc. # 53-3 at ¶
2).

As to the related issue of whether there was an agreement
regarding the deduction of sleep time, La Bella Vida and
Infante submitted record evidence establishing that Infante
spoke with the employees before hiring regarding sleep-time
deductions and that no employee objected or offered a counter-
offer. (Doc. ## 53-1 at 95:12-25; 53-2 at ¶ 5). An employee
also stated that "weekend shift employees had an agreement

that a five hour sleep period would be deducted from the employee's hours. This was well known amongst the staff." (Doc. # 53-3 at ¶ 3).

The Secretary, however, submitted affidavits establishing just the opposite. In twelve affidavits the Secretary points to record evidence establishing that employees were not able to sleep more than 5 hours a night; these affidavits also establish that there was not an agreement as to sleep-time deductions. (Doc. ## 47-4 at 3, ¶ 4; 47-4 at 9, ¶ 4; 47-4 at 18, ¶ 4; 47-4 at 23, ¶ 4; 47-4 at 28, ¶ 4; 47-4 at 33, ¶ 4; 47-4 at 39, ¶ 4; 47-4 at 44, ¶ 4; 50-1 at ¶ 4; 50-2 at ¶ 3; 50-3 at ¶ 4; 50-4 at ¶ 4). Therefore, summary judgment is inappropriate as to sleep-time deductions for Weekend-Shift employees.

### b. **Adequate sleeping facilities**

Furthermore, a genuine issue of material fact exists regarding whether adequate sleeping facilities were provided. Section 785.22 does not define what constitutes adequate sleeping facilities. See 29 C.F.R. 785.22. Nor has the Eleventh Circuit addressed what constitutes adequate sleeping facilities. The Secretary argues this Court should adopt the Eighth Circuit's position that a sofa or sofa-bed is, as a matter of law, inadequate. (Doc. # 47 at 21 (citing Hultgren

v. Cty. of Lancaster, 913 F.2d 498 (8th Cir. 1990)). In contrast, La Bella Vida and Infante urge this Court to adopt a more subjective inquiry assessing whether the employee found the sleeping facilities adequate. (Doc. # 53 at 11 (citing Trocheck v. Pellin Emergency Med. Serv., Inc., 61 F. Supp. 2d 685, 695 (N.D. Ohio 1999)).

Under either standard, a genuine issue of material fact exists. The record contains conflicting evidence as to whether employees were offered a private bedroom. Compare (Doc. ## 53-1 at 57:7-15; 53-2 at ¶ 9), with (Doc. ## 47-4 at 3, ¶ 4; 47-4 at 9, ¶ 4; 47-4 at 18, ¶ 4; 47-4 at 33, ¶ 4). Furthermore, a genuine issue of material fact exists as to the nature of the accommodations in the private bedroom. Compare (Doc. # 53-2 at ¶ 9), with (Doc. # 47-4 at 44, ¶ 4). In addition, there is conflicting evidence regarding the nature of the sofa in the family room. Infante submits the sofa was a sofa-bed and that employees elected to sleep on that sofa-bed (Doc. # 53-2 at ¶ 9), whereas an employee submits that the sofa was merely a sofa (Doc. # 47-4 at 28, ¶ 4). Therefore, summary judgment is inappropriate as to the adequacy of the sleeping facilities.

### c.   Completely relieved from duty

A genuine issue of fact exits as to whether Weekend-Shift employees were completely relieved from their duties. La Bella Vida and Infante have submitted evidence showing that Weekend-Shift employees were instructed to take two 30-minute meal breaks and that those breaks were "very rarely, if ever, interrupted." (Doc. ## 53-2 at ¶ 10; 53-3 at 2). In contrast, the Secretary has submitted evidence showing that there was only one employee on duty (Doc. # 47-1 at 28:8-23), the employee was not free to leave (Id. at 56:7-12), and the employee was required to tend to the residents if needed (Id. at 55:25-56:12). Therefore, a genuine issue of material fact exists as to whether the employees were, in fact, completely removed from duty.

In sum, the Court finds there are genuine issues of material fact regarding (a) whether La Bella Vida and Infante were entitled to deduct sleep time, (b) whether adequate sleeping facilities were provided, and (c) whether La Bella Vida and Infante were entitled to deduct meal breaks as to the Weekend-Shift employees. Accordingly, the Court denies the Secretary's Motion for partial summary judgment as to those issues.

D.    **Minimum Wage and Total Amount Owed**

The Secretary also seeks summary judgment as to whether La Bella Vida and Infante paid their employees below the minimum wage. (Doc. # 47 at 2). However, whether the employees were paid below the minimum wage is a conclusion, which turns in part on whether the sleep-time and meal-time deductions were allowed under the FLSA. With respect to the Weekend-Shift employees, genuine issues of material fact exist regarding whether such deductions were proper.

In addition, it is far from clear how much the Night-Shift employees were paid and the total number of hours they worked. See (Doc. # 47-1 at 34:11-24) (stating employees working the Night Shift "normally" worked 35 hours and "a lot of times" were paid $300 a week). The record also contains conflicting evidence as to the employees' terms of employment and shifts worked. Compare (Doc. # 47-3 at ¶¶ 10-11), with (Doc. # 47-2 at ¶ 6); Compare (Doc. ## 47-1 at 28:4-7; 47-4 at 3, ¶¶ 1, 3; 47-4 at 8, ¶¶ 1, 3; 47-4 at 18, ¶ 1; 47-4 at 23, ¶ 1; 47-4 at 28, ¶ 1; 47-4 at 33, ¶ 1; 47-4 at 38, ¶¶ 1-3; 47-4 at 43, ¶ 1; 50-1 at ¶¶ 1-3; 50-2 at ¶¶ 1-2; 50-3 at ¶¶ 1, 3; 50-4 at ¶¶ 1, 3; 50-5 at ¶¶ 1, 3; 52-1 at 4; 52-1 at 7), with (Doc. ## 48-4 at ¶¶ 1, 2; 48-7 at ¶¶ 1, 2; 48-10 at ¶ 1; 48-12 at ¶ 1; 48-14 at ¶ 1; 48-15 at ¶ 1; 48-16 at ¶ 1; 48-19 at ¶ 1; 48-3 at ¶¶ 1-2; 48-13 at ¶ 1; 48-20 at ¶ 1; 48-

24

22 at ¶¶ 1-2; 48-11 at ¶¶ 1-3; 48-9 at ¶ 1; 48-21 at ¶ 1). Therefore, it would be inappropriate for this Court to grant summary judgment as to whether the employees were paid below the minimum wage.

La Bella Vida and Infante, for their part, argue this case should be dismissed in its entirety because they have paid all back wages, plus an equal amount in liquidated damages, to the employees. (Doc. # 46). Although that is true for three employees, supra pp. 9-10, as to the other employees, genuine issues of material fact exist. Thus, La Bella Vida and Infante's Motion for Summary Judgment is denied to the extent it seeks dismissal of the case based on the argument that La Bella Vida and Infante tendered all damages under the FLSA.

### E. Injunctive Relief

The Secretary seeks an entry of summary judgment that he is entitled to an injunction permanently barring La Bella Vida, their agents, servants, employees, and all persons in active concert or participation with them from violating the provisions of Sections 206, 207, 211(c), and 215(a)(5) of the FLSA. (Doc. # 47 at 2). La Bella Vida and Infante contend the Secretary's claim for injunctive relief should be dismissed as moot.

In order to receive a permanent injunction, "a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." Ala. v. U.S. Army Corps. of Eng'rs, 424 F.3d 1117, 1128 (11th Cir. 2005) (citing Newman v. Ala., 683 F.2d 1312, 1319 (11th Cir. 1982)). A claim for injunctive relief may be mooted if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Reich v. Occupational Safety and Health Review Comm'n, 102 F.3d 1200, 1201 (11th Cir. 1997) (quoting Cty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

But "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." Sec'y of Labor, U.S. Dep't of Labor v. Burger King Corp., 955 F.2d 681, 684 (11th Cir. 1992) (internal quotation marks and citation omitted). "[T]he test for mootness in cases such as this is a stringent one. A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur." Id. (internal alterations and citation omitted).

A genuine issue of material fact exists as to whether a permanent injunction should be issued. La Bella Vida and Infante have submitted record evidence establishing that La Bella Vida has permanently ceased all operations as of May 31, 2015. (Doc. ## 48-2 at ¶ 11; 53-2 at ¶ 11); cf. (Doc. # 47-3 at ¶ 20). The Secretary, however, points to the fact that La Bella Vida is still "an 'active' corporate entity[,] which has issued checks from its operating account as recently as June 2015." (Doc. ## 47-3 at ¶¶ 20-21; 52 at 16). The Secretary also cites to evidence showing Infante is the administrator of an assisted living facility operating out of a former La Bella Vida facility. (Doc. # 47-3 at ¶ 22). The property out of which that assisted living facility operates is still owned by the Infantes or Mr. Infante's company. (Id. at ¶ 22). But, Infante states that she has no affiliation with the assisted living facility. (Doc. # 53-2 at ¶ 12; 53-4 at ¶¶ 2-3).

Whether and to what extent La Bella Vida remains active goes to the very heart of whether the claim for injunctive relief has been mooted. Thus, because there is a genuine issue of material fact, the Court denies the Secretary's, and La

Bella Vida and Infante's respective motions for summary judgment on whether a permanent injunction should issue.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  La Bella Vida and Infante's Motion for Summary Judgment (Doc. # 46) is **GRANTED** to the extent that it seeks to dismiss the claims for Blanco, Carballo, and Febles. However, the Motion (Doc. # 46) is **DENIED** to the extent it seeks dismissal of the entire case.

(2)  The Secretary's Partial Motion for Summary Judgment (Doc. # 47) is **GRANTED** to the extent it seeks an entry of judgment that La Bella Vida was subject to enterprise coverage as defined by Section 203(s)(1)(B); Infante was an employer as defined by Section 203(d); and La Bella Vida violated Sections 211(c) and 215(a)(5).

(3)  The Secretary's Partial Motion for Summary Judgment (Doc. # 47) is **GRANTED** to the extent it seeks an entry of judgment that La Bella Vida and Infante were not entitled to deduct sleep time from hours worked by Night Shift employees.

(4)  The Secretary's Partial Motion for Summary Judgment (Doc. # 47) is **DENIED** to the extent it seeks an entry of judgment that La Bella Vida and Infante were not entitled

to deduct sleep and break time from hours worked by Weekend Shift employees.

(5) The Secretary's Partial Motion for summary judgment (Doc. # 47) is **DENIED** to the extent it seeks an entry of judgment as to whether employees were paid at minimum wage.

(6) The Secretary's Partial Motion for Summary Judgment (Doc. # 47) is **DENIED** to the extent it seeks an entry of judgment that the Secretary is entitled to permanent injunctive relief.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of October, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record